ABRAMS GARFINKEL MARGOLIS BERGSON, LLP
THOMAS H. VIDAL (204432) tvidal@agmblaw.com
KATHY POLISHUK (272008) kpolishuk@agmblaw.com
5900 Wilshire Blvd., Suite 2250
Los Angeles, California 90036
Telephone: (310) 300-2900
Facsimile: (310) 300-2901

Attorneys for Plaintiff
Equals Three, LLC

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EQUALS THREE, LLC, a California Limited Liability Company,<br><br>          Plaintiff,<br><br>     v.<br><br>JUKIN MEDIA, INC., a California Corporation, and DOES 1 through 50, inclusive,<br><br>          Defendants. | CASE NO. _____<br><br>**COMPLAINT FOR**<br><br>1. **DECLARATORY RELIEF;**<br>2. **VIOLATION OF 17 U.S.C. § 512(F)(2); AND**<br>3. **VIOLATION OF CAL BUS & PROF. CODE § 17200**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Equals Three, LLC alleges the following.

## SUMMARY OF COMPLAINT

1.  This is a civil action seeking a declaratory judgment, injunctive relief, and damages for misrepresentation under Title II of the Digital Millennium Copyright Act, as codified at 17 U.S.C. section 512.

2.  The case arises from Defendants' improper assertion of copyright infringement against Plaintiff. The infringement claim was based on Plaintiff's producing and posting videos (the "E3 Episodes") on its "Equals Three" YouTube channel (the "E3 Parody Show"). The E3 Episodes include small portions of user-generated videos that have been published on the Internet and mixed with original comedic material authored by Equals Three that parodies various aspects of the

Complaint
Case No. _____ | 1

incorporated user-generated content for humorous effect. As a result of Defendants' assertion of infringement, YouTube has discontinued the payment of Plaintiff's portion of the advertising revenues that are generated when users view E3 Episodes, which prevents Plaintiff from monetizing the show. Meanwhile, Defendant is permitted to advertise directly on the E3 Parody show, which directs viewers to Defendant's YouTube channel and allows Defendant to profit from E3 Parody Show viewership.

3.  Because Equals Three's use of the alleged copyrighted material in question is lawful under the statutory "fair use" doctrine set forth in the Copyright Act, 17 U.S.C. § 107, Plaintiff brings this action to clarify the rights of the parties and to refute Defendants' assertions of copyright infringement.

## PARTIES

4.  Plaintiff Equals Three, LLC is a California limited liability company doing business in the County of Los Angeles. Equals Three maintains a YouTube channel under the same name from its Culver City studio and is managed by Ray William Johnson, who is known as a "YouTuber," a person who produces and distributes video content through a channel on the YouTube website (www.youtube.com).

5.  Defendant Jukin Media, Inc. is a California Corporation doing business in the County of Los Angeles. Jukin, at its heart, is a content licensing company that acquires rights to user-generated videos and licenses them to digital publishers (e.g., Yahoo), cable channels (e.g., CNN), and others. Jukin also maintains a "multi-channel network" on YouTube.[1] According to its website, Jukin has "positioned itself as the worldwide leader in the discovery, acquisition, monetization, and distribution of user-generated content."

---

[1] According to Wikipedia, a YouTube multi-channel network "is an organization that works with YouTube channels, to offer assistance in areas such as 'product, programming, funding, cross-promotion, partner management, digital rights management, monetization/sales, and/or audience development' in exchange for a percentage of the AdSense revenue from the channel." See http://en.wikipedia.org/wiki/List_of_multi-channel_networks.

Complaint
Case No. _____ | 2

6. On information and belief, though Jukin is not a creator or author of the user-generated videos at issue in this case, Jukin claims to have licensed such videos from the creators and to be authorized to enforce the copyrights of those creators.

7. Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, Defendants Jukin and Does 1 to 50, inclusive, and each of them, were the agents, joint venturers, partners, representatives, or employees of each other and, in doing (or failing to do) the things alleged herein, were acting within the course, purpose, and scope of their agency, joint venture, partnership, representation, or employment. The acts, omissions, and conduct alleged herein of each such defendant were known to, authorized, and ratified by each such other Defendant. It is further alleged, in the alternative, that some or each of the Defendants acted at times independently of all other Defendants to cause damage and injury to Plaintiff.

8. Plaintiff is presently unaware of the true names and capacities of the defendants sued herein as Does 1 through 50, inclusive, and therefore sues each of those defendants by fictitious names. Cross-Complainants will seek leave to amend this complaint to allege the true name and capacity of each Doe defendant when ascertained. For convenience, all references herein to "Defendants" shall be deemed to include all fictitiously named defendants, and each of them, unless otherwise specifically alleged. Plaintiffs allege on information and belief that each Doe defendant is, in some manner, legally responsible for the acts alleged in this complaint and has proximately caused harm and injury to Plaintiff.

9. All references herein to "Defendants" shall be deemed to include all Defendants, and each of them, unless otherwise specifically alleged.

## JURISDICTION AND VENUE

10. This action arises under the copyright laws of the United States, 17 U.S.C. §§ 101 *et seq.*, and Title II of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512.

11. This Court has subject matter jurisdiction over these claims pursuant to 28

Complaint
Case No. _____ | 3

U.S.C. §§ 1331 and 1338, and the Declaratory Judgment Act, 28 U.S.C. § 2201.

12. Venue for this action is proper under 28 U.S.C. §1391(b)(2)-(3).

## FACTUAL ALLEGATIONS

### A. Equals Three's Parody Show

13. Equals Three launched the E3 Parody Show in 2009. Each E3 Episode runs about five minutes long and features a host commenting on a variety of pop-cultural events and happenings that are topical and interesting.

14. Stylistically, the E3 Episodes feature frequent jump cuts, comedic monologues, graphic elements, textual descriptions, still clips, sound effects, as well as video clips from other sources. The E3 Episodes are edited to appeal to the fast-paced tastes of a mostly-male, young-adult and college-aged audience.

15. While the subject matter of each E3 Episode may differ, the elements are essentially the same. The host weaves an originally-crafted humorous story theme throughout the episode using multi-media content—text, graphics, sound effects, and videoclips—to enhance and develop the story. The text, graphics, sound effects, and viceoclips are not the story—they are incorporated into the E3 Episodes to drive the story. The host will frequently offer an originally-authored monologue, and will provide spoken and performed commentary on the various videoclips, including facial expressions, sarcastic remarks, sexual innuendos, and social commentary. The commentary often pokes fun at the videoclips or various social themes derived from the videoclips.

16. In order to engage directly with its audience, each episode of the E3 Parody Show solicits viewers to post comments, answer questions, and share the E3 Episodes through the audience members' social networking accounts.

17. The E3 Parody Show has nearly 11 million subscribers.

### B. Usage of Videoclips

18. It is Equals Three's incorporation of videoclips in the E3 Parody Show that has occasioned this action.

Complaint
Case No. _____ | 4

19.     Some of the commentary and comedy created for the E3 Episodes revolves around user-generated video content that is published through various websites on the Internet, and which may be (or might become) "viral"[2] ("Source Videos").  Equals Three typically scours the Internet to find interesting Source Videos to parody and use in the show.  Sometimes the Source Videos are not found by Equals Three's staff, but sent to Equals Three by fans of the show who find potential Source Videos interesting and who think the potential Source Video would make a good subject for the show.

20.     When used, the Source Videos are short clips excerpted from longer segments, showing only the short pertinent parts necessary to parody the Source Videos on the Parody Show by adding voiceovers, graphics, and other comedic elements.  When a Source Video is used, Equals Three has a strict policy of including a hyperlink to the URL where the Source Video is posted, and during the sign-off to each episode, telling its viewers exactly how to access the Source Videos.

21.     Following are two examples of E3 Episodes using Source Videos.

A.      One of the E3 Episodes titled "Sheep to the Balls" excerpts eighteen seconds from a Jukin Source Video that runs 1:47 minutes in full.  The Source Video is footage of the first individual to purchase the iPhone 6 receiving and opening the new iPhone.  "Sheep to the Balls" uses an excerpt of the Source Video wherein the first iPhone 6 purchaser opens the packaging and drops the phone on the ground.  E3's use of the clip is to parody Apple's insensible packaging of the iPhone, and the "moral of [E3's] story" is "Don't be first at shit."

B.      Another E3 Episode titled "The Resurrection" draws 24 seconds of material from Jukin Source Video that runs 2:03 minutes in full.  The Jukin Source Video was shot in Wisconsin showing a baby bear with his head stuck in a bin and a person using a crane to remove the bin to free the bear.  "The Resurrection" uses

---

[2] According to Wikipedia, a viral video "is a video that becomes popular through the process of (most often) Internet sharing, typically through video sharing websites, social media and email." See http://en.wikipedia.org/wiki/Viral_video.

Complaint
Case No. _____ | 5

the clip to parody the "typical Wisconsin day" and the value of playing with the crane game at Chuck E. Cheese's as a kid.

C.  **Jukin Media's License of Source Videos**

22. Defendant Jukin has claimed that certain Source Videos used in the E3 Episodes are owned, controlled, or administered by Jukin (the "Jukin Material"). Despite the fact that Equals Three's usage of the Jukin Material constitutes a fair use under copyright law, Jukin has objected to such Equals Three's usage on the grounds that it has not obtained—and paid for—a license from Jukin to use the Jukin Material.

23. Based on information and belief, Jukin has even submitted copyright infringement claims and filed DMCA takedown notices in regard to E3 Episodes using Source Videos in which Jukin does not publicly claim an interest. For instance, an E3 Episode titled "Nazi Duck Toilet Paper Assault" includes three clips from other YouTube videos. While YouTube videos typically indicate a particular owner of the material, these three videos indicate owners who are unaffiliated with Jukin.

24. In retaliation for Equals Three's refusal to obtain a license to use the Jukin Material, Jukin has engaged in a campaign of harassment and intimidation designed to destroy Equals Three's business by abusing the Digital Millennium Copyright Act's takedown notice procedure.

D.  **Digital Millennium Copyright Act's "Takedown" Procedure**

25. Title II of the Digital Millennium Copyright Act of 1998 ("DMCA"), 17 U.S.C. § 512, grants online service providers (such as YouTube) protections from secondary copyright infringement liability, so long as they meet certain requirements.

26. One requirement of this DMCA "safe harbor" is that online service providers must implement a "notice-and-takedown" system. 17 U.S.C. § 512(c).

27. The DMCA provides that the owner of copyrighted material may submit a "takedown notice" to an online service provider that is hosting material that allegedly infringes the copyright held by the issuer of the notice. 17 U.S.C. § 512(c).

28. The DMCA provides that a takedown notice should be in writing and

Complaint
Case No. _____ | 6

should state, among other things, that the complaining party has a good faith belief that the use of the material is not authorized by the copyright owner or by law. 17 U.S.C. § 512(c)(3).

29. Upon receipt of a proper takedown notice, a service provider must "respond[] expeditiously to remove, or disable access to, the material that is claimed to be infringing or to be the subject of infringing activity." 17 U.S.C. § 512(c)(1)(C).

30. The DMCA then provides that the user who posted the allegedly infringing material that is the subject of the takedown notice may, but is not required to, in turn, submit a "counter-notice" contesting the claim of infringement. 17 U.S.C. § 512(g)(2).

31. In order to be valid, the counter-notice must include the user's contact information, a signature, a statement under penalty of perjury that the "material was removed or disabled as a result of a mistake or misidentification," and the user's consent to the jurisdiction of his or her local federal court. 17 U.S.C. § 512(g).

32. Once a counter-notice has been submitted, the copyright owner has ten to fourteen business days to file a copyright infringement lawsuit against the user. If the copyright owner does not do so, the service provider can restore the video without fear of secondary liability for copyright infringement. 17 U.S.C. § 512(g)(2).

33. Section 512(f) of the DMCA also creates a cause of action for the user who posted the allegedly infringing material against "[a]ny person who knowingly materially misrepresents under this section (1) that material or activity is infringing, or (2) that material or activity was removed or disabled by mistake or misidentification." 17 U.S.C § 512(f).

E. **Jukin's Actions Against Equals Three**

34. Between May 1, 2014, and continuing through the present, Defendant has filed forty-one claims of copyright infringement with Youtube in regard to E3 Episodes.

35. Once a claim is filed with YouTube, the content is still available to viewers. Nevertheless, Plaintiff is no longer able to receive compensation from ad revenues generated by the episode of the E3 Parody Show in which a copyright claim has been

made. Moreover, Defendant is permitted to place advertisements on the episode, redirecting viewers to its own YouTube channel.

36.   Plaintiff has the opportunity to dispute each claim, and Plaintiff has disputed every claim against it as of the date of this Complaint. Defendant has thirty days to respond each dispute, and Defendant has responded to and rejected twenty-three claim disputes as of the date of this Complaint.

37.   Plaintiff then has the opportunity to appeal up to three rejected claim disputes at a time. Plaintiff has appealed all of Defendant's rejections. Defendant has thirty days to respond to appeals, and Defendant did timely respond to and denied eleven of Plaintiff's appeals with DMCA takedown notices, removing eleven E3 Episodes from YouTube.

38.   Plaintiff submitted DMCA counter-notifications for all eleven videos. When a counter-notification is filed, Defendant has ten to fourteen days to file a lawsuit against Plaintiff; otherwise, the removed content is reinstated on YouTube. Defendant has never filed a lawsuit against Plaintiff. Instead, the videos have been reinstated and Defendant has filed more copyright infringement claims with YouTube, re-initiating the entire process against Plaintiff.

39.   Consequently, Defendant Jukin continues to completely cut off Equals Three revenues from YouTube simply by filing copyright infringement claims. Even worse, Defendant has had Plaintiff's videos removed by filing frivolous DMCA takedown notices.

40.   Moreover, while Jukin can file infinite claims, Equals Three can only appeal three claims at a time. Equals Three, thus, has no meaningful opportunity to prevent the economic harm that Jukin is causing.

F.   **Fair Use Doctrine**

41.   Pursuant to Section 107 of the Copyright Act, 17 U.S.C. § 107, certain uses of copyrighted works are authorized by law as "fair uses."

42.   In determining whether the use of a copyrighted work in any particular case

Complaint
Case No. _____ | 8

is protected as fair use, the statutory factors to be considered include (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work. 17 U.S.C. § 107.

43. *The purpose and character of Plaintiff's use was to create a parody show that incorporates Source Videos to enhance the parodic storyline.* Plaintiff's use of the Source Videos, including the Jukin Material, is a prop to tell a broader humorous story or make a humorous point. The E3 Parody Show does not use the Source Videos like a news broadcast alerting or heralding the existence of the videos to its viewers. The E3 Parody Show is not a web portal that simply "re-broadcasts" the Source Videos. The Source Videos are used expressly as a comedic device to move a comedic story forward.

44. *The purpose and character of Plaintiff's use is highly transformative.* Plaintiff's use is highly transformative, in that it was designed to tell a story of a wholly different character from the stories contained in the Source Videos. This is entirely different from original author's original purpose in creating the work and entirely distinct from the value a licensor, like Jukin, obtains from licensing and publishing the applicable Source Videos.

45. *The nature of the original work may not be creative, per se, and even where it is, the nature of Plaintiff's work is completely different.* The Source Videos and Jukin Material are popular because of what is conveyed in the video itself. The E3 Parody Show uses those videos on a higher level of abstraction. It parodies that content—or may even use it in a contrived context entirely different from actual context of the Source Video—in some cases it weaves a new and different story on top of the original story conveyed in the video, and it pokes fun at the characters and events depicted in the Source Videos. Thus, the Source Videos are used as metanarrative.

46. *The amount used was minimal.* Equals Three's usage of the Jukin Material

Complaint
Case No. _____ | 9

includes only short clips excerpted from longer segments. Frequently, the portion of the Source Video used by Plaintiff is not a continuous segment but is interspersed with commentary and other videos.

47. *Plaintiff's use has caused no market harm and does not threaten the potential market(s) for Jukin Material.* Plaintiff does not advertise the E3 Parody Show using the name or images from the Jukin Material (or other Source Videos), and the E3 Parody Show does not serve as a replacement or substitute for the original Jukin Material. Consequently, fans of the E3 Parody Show "tune in" because the comedic elements of the show appeals to them, not because it is a portal to watch the Jukin Material or other Source Videos. Moreover, as alleged above, the show uses the Jukin Material not for the same purpose for which Jukin licenses it, but for parodic purposes and as a metanarrative to a grander comedic story. Finally, Plaintiff also includes hyperlinks to the URLs where the Jukin Material has been published, where viewers can see the piece in its entirety on a site authorized by Jukin or other licensor to publish it.

**FIRST CAUSE OF ACTION**
(Declaratory Relief)
(Against All Defendants)

48. The allegations of Paragraphs 1 through 43 are realleged and incorporated herein by reference.

49. A real and actual controversy has arisen and now exists between Equals Three and Defendants regarding whether Equals Three's use of the Jukin Material in the E3 Episodes and Plaintiff's posting of those episodes on YouTube, infringes various copyrights that Defendants may lawfully own.

50. Defendants' conduct in repeatedly issuing copyright infringement claims and DMCA takedown notices, despite Plaintiff's counter-notices has forced Plaintiff to seek legal redress to enable the E3 Episodes to be monetized. The controversy is thus real and substantial and demands specific relief through a decree of a conclusive

Complaint
Case No. _____ | 10

character.

51. Plaintiff is entitled to declaratory judgment that its use of the Jukin Materials is lawful under the fair use doctrine and does not infringe on Defendants' copyrights.

## SECOND CAUSE OF ACTION
(Violation of 17 U.S.C. § 512(f)(1))
(Against All Defendants)

52. The allegations of Paragraphs 1 through 43 are realleged and incorporated herein by reference.

53. 17 U.S.C. section 512(f)(1) provides the following

Any person who knowingly materially misrepresents under this section—

(1) that material or activity is infringing . . .

shall be liable for any damages, including costs and attorneys' fees, incurred by the alleged infringer, by any copyright owner or copyright owner's authorized licensee, or by a service provider, who is injured by such misrepresentation, as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing, or in replacing the removed material or ceasing to disable access to it.

54. Equals Three's use of the Jukin materials is lawful under the fair use doctrine and does not infringe any copyright that Defendant owns or administers.

55. On information and belief, Defendant knew that the E3 Episodes did not infringe its copyrights when it sent YouTube the takedown notices regarding those episodes. Moreover, on information and belief, Defendant issued the takedown notices without knowledge to a reasonable certainty that Defendant was actually authorized to act on behalf of the actual copyright owner of the underlying videos. Defendant acted in bad faith when it sent the takedown notices, knowingly and materially misrepresenting that it had concluded that the E3 Episodes were infringing.

Complaint
Case No. _____ | 11

56. In the alternative, Defendant should have known, if it had acted with reasonable care or diligence, that E3 Episodes did not infringe Defendant's copyrights on the dates it sent YouTube its complaint under the DMCA.

57. As a direct and proximate result of Defendant's actions, Plaintiff has been injured substantially and irreparably. Such injury includes, but is not limited to, the financial and personal expenses associated with responding to the claim of infringement, harm to its free speech rights under the First Amendment, and attorneys' fees and costs.

### THIRD CAUSE OF ACTION
(Violation of Cal. Bus & Prof Code § 17200)
(Against All Defendants)

58. The allegations of Paragraphs 1 through 43 are realleged and incorporated herein by reference.

59. Defendants have committed acts of unfair competition as defined by Business and Professions Code section 17200 in performing the acts described herein and in failing to perform the acts described herein because these practices and acts were unfair, unlawful, or fraudulent.

60. The unfair, unlawful, and/or fraudulent acts and practices of Defendants present a continuing threat to Plaintiff and to members of the public in that these acts and practices are ongoing and are harmful and disruptive to Internet commerce and the market for digitally-distributed episodic series.

61. As a direct and proximate result of the aforementioned acts and practices, Defendants interfered with Plaintiff's ability to obtain revenues from the E3 Videos, and have deprived Plaintiff of such revenues, in a scheme to enrich themselves, which revenues should be restored to its rightful owner, Plaintiffs.

### PRAYER FOR RELIEF

Wherefore, Plaintiff prays for relief and judgment against Defendants, and each of them, as follows:

1. that the Court declare that the rights and obligations of Plaintiff and

Defendants under the United States Copyright Act, to wit that the E3 Episodes is non-infringing of Defendants' alleged copyrights in the Jukin Material;

2. that the Court enjoin Defendants, their agents, attorneys, and assigns from asserting a copyright claim against Equals Three in connection with Jukin Materials;

3. that the Court award actual damages, pursuant to 17 U.S.C.A. § 512(f), according to proof at trial;

4. that the Court award compensatory damages in an amount according to proof at trial;

5. that the Court award punitive or exemplary damages, as the Court deems reasonable and appropriate;

6. that the Court award pre-judgment interest and post-judgment interest at the highest rates allowable by law;

7. that the Court award reasonable attorneys' fees and costs incurred by Plaintiff in this action pursuant to 17 U.S.C.A. § 1203(b)(5);

8. for costs of suit; and

9. that the Court award such other, further, or different relief that it may find just, proper, and equitable under the circumstances.

DATED: November 21, 2014   ABRAMS GARFINKEL MARGOLIS BERGSON, LLP

By: _____
Thomas H. Vidal
Kathy Polishuk
Attorneys for Plaintiff

\\

\\

\\

Complaint
Case No. _____ | 13

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial as to all causes of action triable by jury.

DATED: November 21, 2014    ABRAMS GARFINKEL MARGOLIS BERGSON, LLP

By: _____
Thomas H. Vidal
Kathy Polishuk
Attorneys for Plaintiff

Abrams Garfinkel Margolis Bergson, LLP
5900 Wilshire Boulevard, Suite 2250
Los Angeles, California 90036
Telephone: (310) 300-2900
Facsimile: (310) 300-2901