VENABLE LLP
Douglas C. Emhoff (SBN 151049)
demhoff@venable.com
Tamany Vinson Bentz (SBN 258600)
tjbentz@venable.com
Melissa C. McLaughlin (SBN 273619)
mcmclaughlin@venable.com
2049 Century Park East, Suite 2100
Los Angeles, CA  90067
Telephone:   (310) 229-9900
Facsimile:   (310) 229-9901

Attorneys for Defendant and
Counterclaimant Jukin Media, Inc.

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EQUALS THREE, LLC, a California limited liability company,<br><br>                    Plaintiff,<br><br>          v.<br><br>JUKIN MEDIA, INC., a California corporation, and DOES 1 through 50, inclusive,<br><br>                    Defendants.<br><br>JUKIN MEDIA, INC., a California corporation,<br><br>                    Counterclaimant,<br><br>          v.<br><br>EQUALS THREE, LLC, a California limited liability company; and RAY WILLIAM JOHNSON, an individual,<br><br>                    Counterclaim Defendants. | CASE NO. 2:14-cv-09041-SVW-MAN<br><br>Hon. Stephen V. Wilson<br>Courtroom 6<br><br>**DEFENDANT AND COUNTERCLAIMANT JUKIN MEDIA, INC.'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Hearing Date: April 27, 2015<br>Time:            1:30 p.m.<br><br>Action Filed: Nov. 21, 2014<br>Trial Date:    None set |

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

MOTION FOR PARTIAL SUMMARY JUDGMENT

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on April 27, 2015 at 1:30 p.m., or as soon thereafter as the matter may be heard before the Honorable Stephen V. Wilson, located at 312 N. Spring Street, Los Angeles, California 90012, Defendant and Counterclaimant Jukin Media, Inc. ("Jukin") will and hereby does move the Court for partial summary judgment pursuant to Federal Rule of Civil Procedure 56 on the ground that there is no genuine issue of material fact and that Jukin is entitled to judgment as a matter of law.

Jukin alleges that Plaintiff and Counterclaim Defendant Equals Three, LLC and Counterclaim Defendant Ray William Johnson (Equals Three, LLC and Ray William Johnson are collectively referred to as "Equals Three") engaged in copyright infringement by publishing Jukin's videos for profit without any license, authorization, permission, or consent from Jukin. Equals Three admits that it published Jukin's videos, but contends that no license or consent was required because its use of the videos was fair use. Equals Three is not protected by the fair use defense under 17 U.S.C. § 107 because Equals Three's use of the original works is not transformative, the original works are creative works subject to copyright protection, Equals Three used substantial amounts and substantive portions of the original works, and Equals Three's use harmed the potential market for the original works.

This Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Statement of Uncontroverted Facts and Conclusions of Law, the Declaration of Christina Smith and exhibits thereto, the Declaration of Andrew Dignan, the Declaration of Regie Ramas and exhibit thereto, the Declaration of Tamany Vinson Bentz, the papers and pleadings on file in this action, and such other and further papers and argument as may be submitted to the Court.

This Motion is made following the conference of counsel pursuant to L.R. 7-

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

1

1  3 at the status conference in this action on February 9, 2015, during which the

2  parties and the Court discussed this motion for summary judgment to resolve the

3  issue of fair use and the Court set a hearing date and briefing schedule.  (Dkt. 29).

4

5  Dated:  March 23, 2015                    VENABLE LLP

6                                            By:  /s/ Tamany Vinson Bentz
                                                  Douglas C. Emhoff
7                                                 Tamany Vinson Bentz
8                                                 Melissa C. McLaughlin
                                                  Attorneys for Defendant and
9                                                 Counterclaimant Jukin Media, Inc.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

2

# TABLE OF CONTENTS

I.     INTRODUCTION ......................................................................... 1

II.    PROCEDURAL BACKGROUND ................................................ 2

III.   STATEMENT OF FACTS ............................................................ 3

    A.    The Internet Provides Opportunities Based on Individuals' Original Video Content ............................................................ 3

    B.    Jukin's Business: Connecting Individual Video Owners and Media Professionals.......................................................... 4

    C.    Equals Three's Infringing Use of Jukin's Videos ............................ 7

    D.    Harm to Jukin from Equals Three's Infringement .......................... 8

IV.    LEGAL STANDARD .................................................................. 9

V.     LEGAL ARGUMENT................................................................. 10

    A.    Overview of the Fair Use Doctrine .................................................. 10

    B.    Equals Three's Use of Jukin's Videos is Not a Fair Use Parody..... 11

    C.    Application of the Fair Use Factors ................................................. 14

        1.    Factor 1 Weighs Against Fair Use Because Equals Three's Use is not Transformative...................................... 14

            a.    Equals Three's uses do not transform the purpose or character of the accused works............................. 15

            b.    Equals Three's uses are commercial in nature. .......... 17

            c.    Equals Three's conduct is improper and does not warrant application of fair use. .................................. 18

        2.    Factor 2 Weighs Against Fair Use Because the Copyrighted Work is Creative ............................................. 19

        3.    Factor 3 Weighs Against Fair Use Because Equals Three Used Substantial Portions of Jukin's Original Videos........... 20

        4.    Factor 4 Weighs Against Fair Use Because Equals Three's Use Harms the Market for Jukin's Original Videos ...................................................................... 22

VI.    CONCLUSION.......................................................................... 25

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

MOTION FOR PARTIAL SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)............................................ 10

*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 114 S.Ct. 1164 (1994) ............
.................................................................................11, 12, 15, 20, 21, 23

*Celotex v. Catrett*, 477 U.S. 317 (1986) .......................................................... 9

*Dr. Seuss Enter., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394 (9th Cir. 1997) ........................................................................................ 11, 12

*Dr. Seuss Enter., L.P. v. Penguin Books USA, Inc.*, 924 F. Supp. 1559 (S.D. Cal. 1996).......................................................................................... 12

*Fisher v. Dees*, 794 F.2d 432 (9th Cir. 1986) .................................... 10, 11, 12, 23

*Gaylord v. U.S.*, 595 F.3d 1364 (Fed. Cir. 2010) ............................................. 15

*Harper & Row, Publishers, Inc. v. Nation Enter.*, 471 U.S. 539, 105 S.Ct. 2218 (1985)...................................................10, 11, 17, 18, 19, 20, 21, 22

*HarperCollins Publishers L.L.C. v. Gawker Media LLC*, 721 F. Supp. 2d 303 (S.D.N.Y. 2010).......................................................................... 16, 18

*Henley v. DeVore*, 733 F. Supp. 2d 1144 (C.D. Cal. 2010)................................... 11

*Hustler Magazine Inc. v. Moral Majority Inc.*, 796 F.2d 1148 (9th Cir. 1986) ... 16

*Lewis Galoob Toys, Inc. v. Nintendo of Am., Inc.*, 964 F.2d 965 (9th Cir. 1992) ........................................................................................... 24

*Los Angeles News Service v. KCAL-TV Channel 9*, 108 F.3d 1119 (9th Cir. 1997) ...........................................................................16, 19, 20, 21, 22, 23

*Marcus v. Rowley*, 695 F.2d 1171 (9th Cir. 1983).......................................... 15, 16

*Mattel, Inc. v. Walking Mountain Prod.*, 353 F.3d 792 (9th Cir. 2003)............... 12

*MCA, Inc. v. Wilson*, 677 F.2d 180 (2d Cir. 1981) ............................................ 11

*Monge v. Maya Magazine, Inc.*, 688 F.3d 1164 (9th Cir. 2012) ...................... 7, 19

*Morris v. Guetta*, No. LA CV12-00684 JAK, 2013 WL 440127 (C.D. Cal. Feb. 4, 2013) ....................................................................... 11, 17, 19

*Rogers v. Koons*, 960 F.2d 301 (2d Cir. 1992) ................................................. 14

*Seltzer v. Green Day, Inc.*, 725 F.3d 1170 (9th Cir. 2013)............................... 15, 17

*Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 104 S.Ct. 774 (1984)................................................................................... 17, 23

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

MOTION FOR PARTIAL SUMMARY JUDGMENT

*Supermarket of Homes, Inc. v. San Fernando Valley Bd. of Realtors*, 786 F.2d 1400 (9th Cir. 1986) ................................................................ 16

*Wall Data Inc. v. Los Angeles Cnty. Sheriff's Dep't*, 447 F.3d 769 (9th Cir. 2006) ...................................................................................... 15

*Walt Disney Prod. v. Air Pirates*, 581 F.2d 751 (9th Cir. 1978) ...................... 23

## Statutes

17 U.S.C. § 107 ......................................................................................... 10

17 U.S.C. § 107(1) .................................................................................... 15

17 U.S.C. §102(6) ..................................................................................... 19

## Other Authorities

Hon. Pierre Leval, Toward a Fair Use Standard, 103 Harv. L. Rev. 1105, 1111 (1990) ............................................................................................ 15

https://support.google.com/youtube/#topic=4355169 (last visited Feb. 24, 2015) ......................................................................................................... 3

https://support.google.com/youtube/answer/3309389 (last visited Feb. 24, 2015) ......................................................................................................... 3

https://support.google.com/youtube/topic/1115889?hl=en&ref_topic=26763 20 (last visited Feb. 24, 2015) ................................................................. 4

https://www.youtube.com/yt/about/ (last visited Feb. 24, 2015) ..................... 3

https://youtube.com/user/RayWilliamJohnson (last visited Feb. 26, 2015) ........... 7

## Rules

Fed. R. Civ. P. 56(c) .................................................................................... 9

Fed. R. Civ. P. 56(e) .................................................................................... 9

## Treatises

3 M. Nimmer, Nimmer on Copyright § 13.05 [A], at 13–72 to –73 (rev. ed. 1985) ..................................................................................................... 18

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

iii

# I.  **INTRODUCTION**

This motion asks the Court to determine whether Equals Three's use of Jukin's videos is fair use under the copyright statute.

Jukin is a digital media company headquartered in Los Angeles, California, that provides content and licensing resources for internet video content, with a library of over 17,000 pieces of original user-generated content.  To build this library, Jukin employs eleven people full time to discover trending and valuable content.  These employees devote their time to identifying content that will be popular and valuable – determinations that depend on their data analysis and experience in the digital media industry.  Jukin then commits its resources to finding the correct owner of the content and acquiring or licensing it.  Once Jukin and the owner enter a deal, Jukin actively markets the video to increase its value to the benefit of the creator and Jukin.

Equals Three broadcasts a YouTube show that features videos created and owned by others and, in many cases, videos owned by Jukin.  Equals Three's copying is so pervasive and regular that Jukin believes Equals Three intentionally watches Jukin's network for content to copy.  Jukin's content allows Equals Three to avoid the drudgery and financial costs of identifying popular content or creating new content.  Equals Three knows the content will be popular because Jukin selected it and will support it through marketing efforts.  As Jukin supports the popularity of a video, it inevitably supports the popularity of Equals Three's copy.

Under these circumstances, all of the elements of fair use weigh in favor of Jukin.

First, Equals Three's use of Jukin's videos is not transformative.  Although Equals Three refers to its show as a parody, it is far from meeting the definition of parody under fair use case law because it has not created new works that criticize and/or ridicule the original works.  Rather, Equals Three copied large amounts of Jukin's videos and presented them in largely an unaltered form.  The Jukin videos

V E N A B L E   L L P
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

and Equals Three's shows, accordingly, serve the same purpose of entertainment and humor, and the minimal elements that Equals Three added (*e.g.*, subtitles, restatements of the videos, or related jokes) do not change the nature of the original videos or put them in a different context.

Second, Jukin's original videos are creative, which entitles them to more protection than purely factual works. Jukin's videos are subject to copyright protection as audio visual works. Courts recognize such works are entitled to strong copyright protection and that this fair use factor disfavors fair use. This is especially true when, as here, the most important parts of the work are copied by the infringing work.

Third, Equals Three copied the heart of Jukin's original videos. It appropriated and re-broadcast the most valuable and entertaining portions of the original works, which was often also a quantitatively large amount of the originals.

Fourth, the Equals Three shows at the center of the parties' dispute copy and profit from Jukin's videos within days or weeks of the initial publication, when the videos' values are at their highest point and most likely to be licensed to others. Jukin believes that Equals Three specifically targets this content at peak value so that Equals Three can itself derive the highest-possible value from the video. This value would otherwise accrue to Jukin, its licensors, and its customers. As such, Equals Three's use of Jukin's videos diverts advertising revenue from Jukin, in addition to the licensing and other ancillary revenue that Jukin loses from Equals Three's infringement.

Accordingly, Jukin requests that this Court grant its motion for partial summary judgment and enter judgment in favor of Jukin on the issue of fair use.

## II.   PROCEDURAL BACKGROUND

On November 21, 2014, Equals Three instigated this litigation when it filed a declaratory judgment action against Jukin seeking a determination that its copying was fair use under the copyright statute. (Doc. 1, Equals Three Complaint

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

["Compl."]).  Jukin answered the Complaint and filed Counterclaims against Equals Three, and Ray William Johnson, an owner of Equals Three, in a timely manner and on January 12, 2015.  (Docs. 10, Stipulation to Extend Time; 11, Jukin's Answer; 12, Jukin's Counterclaim; and 31, Equals Three and Johnson's Answer to Counterclaim).

The parties agreed the issue of fair use was ripe for a determination on summary judgment.  (Declaration of Tamany Vinson Bentz at ¶ 2).  The Court subsequently agreed to hear this motion and the remainder of the case was stayed pending the outcome of this motion.  (*Id.* at ¶ 3).  Since it is undisputed that Equals Three used Jukin's videos, a determination that Equals Three's use was not "fair use" will likely be case dispositive.

## III.   STATEMENT OF FACTS

### A.   The Internet Provides Opportunities Based on Individuals' Original Video Content

In recent years, the internet has become an increasing source of entertainment and has created new opportunities for individuals and businesses to create and distribute content and generate revenue from that content.  One such opportunity is through YouTube, a hugely popular website that "allows billions of people to discover, watch and share originally-created videos." *See* https://www.youtube.com/yt/about/ (last visited Feb. 24, 2015).  Viewers can browse, search, and watch videos on YouTube, as well as subscribe to their favorite channels, while content owners can upload their original videos to YouTube and create channels dedicated to their videos.  *See* https://support.google.com/youtube/#topic=4355169; https://support.google.com/youtube/answer/3309389 (last visited Feb. 24, 2015). Content owners can generate revenue in several ways, such as by allowing advertisements on their YouTube videos or channels, allowing viewers to make voluntary payments through a "fan funding" program, and creating paid content for

V E N A B L E   L L P
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

1   viewers to watch by rental, purchase, or subscription.  *See*

2   https://support.google.com/youtube/topic/1115889?hl=en&ref_topic=2676320

3   (last visited Feb. 24, 2015).  Unfortunately, online access to creative content also

4   makes it easier for copyright infringers to illegally acquire and profit from others'

5   intellectual property.  The parties involved in this action are prime examples of

6   how the internet can be used to build a business, whether lawfully (Jukin) or

7   through infringement (Equals Three).

8       **B.    Jukin's Business: Connecting Individual Video Owners and**

9           **Media Professionals**

10      Although uploading videos to YouTube does not require great technical

11  expertise, individual video owners often lack the knowledge, experience, and

12  resources necessary to take the next steps and fully capitalize on the videos that

13  they have created (whether through YouTube or elsewhere).  Jukin's business

14  addresses this problem and helps individual video owners increase views of their

15  videos, maximize revenue through licensing and increased views, and importantly,

16  protect their intellectual property by enforcing their rights against infringers.  (*See*

17  Declaration of Christina Smith ["Smith Decl."] at ¶¶ 10-13, 21-24, 26-27; SUF

18  146-150; Declaration of Andrew Dignan ["Dignan Decl."] at ¶ 4).

19      Jukin acquires the rights to videos directly from individual video owners.

20  (SUF 12).  Jukin has eleven full time employees who devote their time to

21  researching videos that are likely to be popular and valuable, *i.e.*, have the potential

22  to go viral.[1]   (*Id.* 13-15).  Identifying video content is no small task – Jukin

23  evaluates videos on a case-by-case basis and for every 400 videos it reviews only

24  about 20 are considered for acquisition.  (*Id.* 15-17).  Jukin considers information

25

26  _____

27  [1] A viral video is one that becomes popular through internet sharing, typically
    through video sharing websites, social media or email.  *See* Doc. 1, Compl. at page
    5 n.2.

28

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

about each particular video, such as its performance (*e.g.*, whether it is becoming popular on YouTube) and whether the video would be a good fit for Jukin's YouTube network or media industry partners. (*Id.* 18). Jukin's overall determination, however, is based on its industry experience and judgment as to whether a video would be entertaining and marketable. (*Id.* 18).

Once videos are identified for acquisition, Jukin undertakes substantial research and analytical efforts to locate and contact the video owner. Jukin's team performs internet image searches, keyword searches, and cross-references video information on the internet to find the earliest posting of the video and to obtain a lead to the owner of the video. (*Id.* 20). Then they reach out to the potential owner and ask a series of questions designed to confirm that the person with whom they are speaking is the actual owner of the video. (*Id.* 21). This information is further cross-referenced using the internet and proprietary tools. (*Id.* 22). All of this work is necessary so that Jukin can acquire rights from the appropriate content owner. Jukin's agreements with content owners include license fees and often a share of the net proceeds earned from the video. (*Id.* 23-24).

Typically, these videos are the most valuable within the initial days and weeks of their first publication, when they are still novel but other outlets can see their growing popularity. (*Id.* 6). Once Jukin has acquired rights, it works to monetize a video in a number of ways.

First, Jukin uploads the video to its YouTube multi-channel network and Jukin's own content-focused websites, which increase views of the video. (*See id.* 5, 8, 25; Smith Decl. at ¶ 7). Jukin's YouTube network garners over 750 million monthly views and 2.5 billion viewed minutes per month. (Smith Decl. at ¶ 8). When members of the public view the videos on Jukin's YouTube network, the videos earn advertising revenue. (SUF 8).

Second, Jukin uses videos to create original productions which generate traffic to Jukin's network and websites and, thereby, generate advertising revenue

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

MOTION FOR PARTIAL SUMMARY JUDGMENT

1    and opportunities for brand sponsorships.  (*See* Smith Decl. at ¶ 7; SUF 11).

2          Third, Jukin monetizes videos via ad-supported or subscription-based third-

3    party syndicators, whereby other companies take responsibility for content

4    distribution and use Jukin's videos to generate advertising revenue. (SUF 9).

5          Fourth, Jukin promotes the videos through its entertainment and media

6    industry contacts and works to license the videos to more traditional media

7    platforms.  (SUF 146; Dignan Decl. at ¶ 4; Smith Decl. at ¶ 13).  For instance,

8    some of the videos at issue in this lawsuit have been licensed to television and

9    cable networks for use in popular shows, which resulted in substantial license fees.

10   (SUF 147-150).  Media partners also pay to sponsor a particular compilation of

11   Jukin's videos, including sponsors who pay for advertising before, during, and

12   after the video (*i.e.*, "pre-roll," "mid-roll," and "post-roll").  (*Id.* 10).

13         Finally, Jukin also employs an in-house rights management team, which

14   generates revenue by enforcing the copyrights in the videos.  The rights

15   management team uses several methods to locate infringement; including

16   YouTube's Content Manager System, which notifies Jukin when infringing content

17   is posted to YouTube, and spending significant time searching the internet for

18   infringing copies and identifying persistent infringers.  (*Id.* 22-24).  Once

19   infringing content has been identified, the rights management team contacts the

20   infringer and works diligently to resolve the infringement through a licensing

21   agreement.  (*See id.* 26; Smith Decl. at ¶¶ 26-27).  In fact, until Equals Three, Jukin

22   has been almost universally able to resolve infringement either because the

23   infringer stopped using the content or engaged in a business arrangement with

24   Jukin to license the content.  (SUF 26-27; Smith Decl. at ¶¶ 26-27).   Jukin had not

25   used litigation to enforce its rights until this case.  (SUF 27).  Jukin also uses

26   YouTube's procedures to claim infringing copies of its material on YouTube,

27   which will re-direct the monetization of infringing copies to Jukin, while allowing

28   the videos to remain available for viewing.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

MOTION FOR PARTIAL SUMMARY JUDGMENT

## C.    Equals Three's Infringing Use of Jukin's Videos

It is undisputed here that Equals Three uses Jukin's videos without permission.  (SUF 28, 151).[2]  Equals Three produces and broadcasts an online show called "Equals Three," which is available on Counterclaim Defendant Ray William Johnson's YouTube channel.  (*Id.* 30); *see also* https://youtube.com/user/RayWilliamJohnson (last visited Feb. 26, 2015).  Each episode of Equals Three is approximately five or six minutes long and consists of a greeting by the host, several viral videos (which are not the original content of Equals Three), and some banter from the host regarding each video.  (SUF 32).  The videos utilized in the Equals Three show are typically humorous and Equals Three's comments regarding the videos highlight the inherent humor in the videos. (*See* Declaration of Regie Ramas, Ex. 1).

Equals Three does not create the videos used in its show.  Rather, it simply copies other creators' content.  Equals Three does not invest in evaluating the videos or securing a license.  In fact, instead of sifting through the millions of hours of videos to select likely popular content, like Jukin does, Equals Three simply has a pattern and practice of copying Jukin's videos.  By doing so, Equals Three is able to freeload off of the hard work Jukin puts into evaluating the marketability of a video.  Equals Three is, therefore, using Jukin to avoid the drudgery of finding popular content and this in-and-of-itself undermines Equals Three's fair use argument.

Equals Three broadcasts the most valuable and critical portions of the

---

[2] Even if this were disputed, the issue of fair use is still ripe for determination.  Fair use as an "affirmative defense presumes that unauthorized copying has occurred, and is instead aimed at whether the defendant's use was fair." *Monge v. Maya Magazine, Inc.*, 688 F.3d 1164, 1170 (9th Cir. 2012).

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

MOTION FOR PARTIAL SUMMARY JUDGMENT

videos, in substantially original and unaltered form.[3]   (*See* SUF 44, 49, 54, 59, 64, 69, 74, 79, 84, 89, 96, 102, 107, 112, 117, 122, 127, 132).  Often the most relevant and entertaining portions of the viral videos are repeated more than once during a single episode of Equals Three's show.  (*Id.* 34).

As discussed in detail below, the host's contribution to the show does not give the videos their entertainment value, nor does it transform the nature of the videos.  Nor is the show a parody of the original video.  Rather, the host points out the aspects of the videos that provide their intrinsic entertainment value.  (*See id.* 44, 49, 54, 59, 64, 69, 74, 79, 84, 89, 96, 102, 107, 112, 117, 122, 127, 132).

### D.   Harm to Jukin from Equals Three's Infringement

Equals Three's infringement is harming Jukin, as well as the individual video owners who receive a share of the proceeds from Jukin's monetization of their videos.  (*Id.* 136-45, 153-55).

Jukin and individual creators are losing advertising, sponsorship, and licensing revenue and the ancillary benefits of monetized viewership due to Equals Three's infringement.[4]  (*Id.* 138-45, 153-55).  The infringement has an adverse effect on the market for Jukin's original videos by exposing the videos to a significant number of viewers who no longer have a need to view them from their authorized sources.  (*Id.* 31, 137-38).  As Equals Three uses the most valuable and entertaining portions of the original videos, viewers are unlikely to go to Jukin's network and other methods of distribution to watch the original videos after they

---

[3] It is possible that these videos are being obtained in violation of YouTube's terms of service, as the videos are being downloaded by Equals Three from YouTube for incorporation into its production.

[4] Jukin used YouTube's procedures to redirect advertising revenue from Equals Three's infringing videos to Jukin.  In other words, Jukin collects the advertising revenue right now from Equals Three's infringing shows.  The redirection of the advertising revenue is what precipitated this lawsuit because Equals Three would like to force YouTube to stop redirecting the advertising revenue and allow Equals Three to profit from the infringing videos.  Doc. 1, Compl. at ¶ 2.

V E N A B L E   L L P
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

have already seen them on the Equals Three show. (*See id.* 137-39). As such, Jukin is losing views on its own network and websites. (*Id.* 138). This causes Jukin to lose the advertising and sponsorship revenue it would have derived from viewers coming to Jukin's network to watch Jukin's content. (*Id.* 140). Furthermore, the loss of viewership is not a one-time occurrence. (*Id.* 142). Jukin is also missing out on capturing viewers who may engage in repeated viewing within Jukin's network and the conversion of single-time viewers to long-term viewers or subscribers. (*Id.* 142-43).

Since Equals Three is copying Jukin's videos rather than obtaining a license for them, Jukin and individual creators are also losing the license fee that Equals Three should have paid. (*See id.* 150-51). Moreover, Equals Three's continual and blatant copying sends a signal to other infringers that they too can copy Jukin's content without a license. (*Id.* 155).

## IV. **LEGAL STANDARD**

Summary judgment is proper when the record indicates that "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

If the nonmoving party has the burden of persuasion at trial (*e.g.*, the counterclaim defendants on an affirmative defense), the moving party's initial burden on summary judgment "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party satisfies this burden, the nonmoving party "may not rest upon the mere allegations or denials" of its pleadings, but "must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 322 n.3 (citing Fed. R. Civ. P. 56(e).

The Supreme Court has emphasized that not every factual dispute will defeat summary judgment, rather the requirement is that "there be no *genuine* issue of

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

1  material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  A

2  material fact is one that "might affect the outcome of the suit under the governing

3  law." *Id.* at 248.  An issue of material fact is "genuine" when "the evidence is such

4  that a reasonable jury could return a verdict for the nonmoving party." *Id.*

5  **V.    LEGAL ARGUMENT**

6    **A.    Overview of the Fair Use Doctrine**

7      Fair use is an affirmative defense to copyright infringement – "a *limited*

8  privilege . . . to use the copyrighted material in a reasonable manner without the

9  owner's consent." *Fisher v. Dees*, 794 F.2d 432, 435 (9th Cir. 1986) (citing

10  *Harper & Row, Publishers, Inc. v. Nation Enter.*, 471 U.S. 539, 105 S.Ct. 2218,

11  2225 (1985)) (emphasis added).  The fair use doctrine is codified in section 107 of

12  the Copyrights Act of 1976, which provides:

13  Notwithstanding the provisions of sections 106 and 106A, the fair use of a copyrighted work, including such use by reproduction in copies

14  or phonorecords or by any other means specified by that section, for purposes such as criticism, comment, news reporting, teaching

15  (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright. In determining whether

16  the use made of a work in any particular case is a fair use the factors to be considered shall include—

17

18      (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

19      (2) the nature of the copyrighted work;

20      (3) the amount and substantiality of the portion used in relation

21  to the copyrighted work as a whole; and

22      (4) the effect of the use upon the potential market for or value of the copyrighted work.

23  The fact that a work is unpublished shall not itself bar a finding of fair use if such finding is made upon consideration of all the above

24  factors.

25  17 U.S.C. § 107.

26      Equals Three bears the burden of proving fair use because fair use is an

27  affirmative defense to Jukin's counterclaim of copyright infringement.  *See, e.g.,*

28  *Morris v. Guetta*, No. LA CV12-00684 JAK, 2013 WL 440127, at *5 (C.D. Cal.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

10

1   Feb. 4, 2013); *Henley v. DeVore*, 733 F. Supp. 2d 1144, 1151 (C.D. Cal. 2010).

2   **B.      Equals Three's Use of Jukin's Videos is Not a Fair Use Parody**

3   Equals Three contends its infringing videos are parodies and, therefore,

4   protected by fair use.  All parodies are not fair use, however, and the "suggestion

5   that any parodic use is presumptively fair has no . . . justification in law or fact . . .

6   ." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 581, 114 S.Ct. 1164 (1994);

7   *see also Fisher*, 794 F.2d at 435 (citing *Harper & Row*, 105 S.Ct. at 2231).  In fact,

8   even parodies must be evaluated based on the fair use factors and judged on a case

9   by case basis.  *Campbell*, 510 U.S. at 581. As discussed *infra*, Equals Three's

10  videos cannot pass the four factor test and cannot qualify for fair use.

11  Nevertheless, we specifically consider whether Equals Three's use qualifies

12  as parody under the law because it is the crux of Equals Three's justification for

13  copying Jukin's videos.  A parody is defined as a "literary or artistic work that

14  broadly mimics an author's characteristic style and holds it up to ridicule." *Dr.*

15  *Seuss Enter., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1401 (9th Cir.

16  1997).  For purposes of copyright law, an accused work can only be a parody if it

17  uses "some elements of a prior author's composition to create a new one that, at

18  least in part, comments on that author's works." *Campbell*, 510 U.S. at 580.  An

19  accused work that "has no critical bearing on the substance or style of the original

20  composition, which the alleged infringer merely uses to get attention or to avoid

21  the drudgery in working up something fresh" cannot claim to fairly borrow from

22  the original and the extent of its commerciality becomes more important. *Id.* at

23  580; *see also Fisher*, 794 F.2d at 436 (accused work is not a parody if the infringer

24  used the original simply to save the effort of creating his own original work)

25  (citing *MCA, Inc. v. Wilson*, 677 F.2d 180, 183-85 (2d Cir. 1981)).

26  Courts should furthermore "be wary of post hoc rationalizations of parody,"

27  and "doubts about whether a given use is fair should not be resolved in favor of the

28  self-proclaimed parodist." *Henley*, 733 F. Supp. 2d at 1152 (quoting *Campbell*,

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

11

1   510 U.S. at 599 (Kennedy, J., concurring)); *see also Dr. Seuss Enter., L.P. v.*

2   *Penguin Books USA, Ltd.*, 109 F.3d 1394, 1403 (9th Cir. 1997) ("We completely

3   agree with the district court that Penguin and Dove's fair use defense is 'pure

4   shtick' and that their post-hoc characterization of the work is 'completely

5   unconvincing.'"). As a result, "[c]ourts have allowed parody claims only where

6   there was a discernable direct comment on the original." *Dr. Seuss Enter., L.P. v.*

7   *Penguin Books USA, Inc.*, 924 F. Supp. 1559, 1569 (S.D. Cal. 1996).

8       *Campbell* is the leading case on fair use parody. In *Campbell*, the rap group

9   2 Live Crew used portions of the 1964 rock ballad "Oh, Pretty Woman" in their

10   rap song "Pretty Woman." *Campbell*, 510 U.S. at 572-73. The Supreme Court

11   found that the accused work could be regarded as a parody: "2 Live Crew

12   juxtaposes the romantic musings of a man whose fantasy comes true, with

13   degrading taunts, a bawdy demand for sex, and a sigh of relief from paternal

14   responsibility. The latter words can be taken as a comment on the naiveté of the

15   original of an earlier day, as a rejection of its sentiment that ignores the ugliness of

16   street life and the debasement that it signifies." *Id.* at 583.

17       Likewise, the Ninth Circuit found that photographs of nude or frazzled

18   looking Barbie dolls in sexually suggestive or dangerous contexts "parody Barbie

19   and everything Mattel's doll has come to signify," namely, the harm of "Barbie's

20   influence on gender roles and the position of women in society." *Mattel, Inc. v.*

21   *Walking Mountain Prod.*, 353 F.3d 792, 802 (9th Cir. 2003). The Ninth Circuit

22   also found that a 1980's comedy song called "When Sonny Sniffs Glue" was a

23   parody of the 1950's song "When Sunny Gets Blue," as it changed the lyrics and

24   most of the music of the original. *Fisher v. Dees*, 794 F.2d 432, 437 (9th Cir.

25   1986) (parody changed words from "When Sunny gets blue, her eyes get gray and

26   cloudy, then the rain begins to fall" to "When Sonny sniffs glue, her eyes get red

27   and bulgy, then her hair begins to fall").

28       Equals Three's use of the videos is nothing like the parodies that have been

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

MOTION FOR PARTIAL SUMMARY JUDGMENT

recognized as fair use. Equals Three's videos do not mimic the style of Jukin's videos to create new works, but rather, they appropriate the exact videos owned by Jukin. Equals Three's videos are distinct from the parodies in *Campbell* and *Mattel* because Equals Three does not change and ridicule the originals – its shows do not contrast the sentiments of the original videos with conflicting sentiments. Rather, the comments in Equals Three's videos do no more than highlight the same humorous elements present in the original videos. In fact, Equals Three admits as much in its Complaint and alleges the videos are nothing more than props for its show. Doc. 1, Compl. at ¶ 43. Of the millions of potential props available, Equals Three targets Jukin's, and refuses to pay any fee for its use.

By way of example, Jukin's video "Disney World Surprise Gone Wrong" shows two children finding out they are going on a surprise trip to Disney World. (*See* SUF 62-63; Ramas Decl., Ex. 1, at Ch. 5). While the older daughter screams in excitement, the younger son bursts into tears and exclaims "I don't want to." (*See id.*). Equals Three's show titled "Like a Girl" shows Jukin's original video interspersed with a few comments by the host. (*See* SUF 64; Ramas Decl., Ex. 1, at Ch. 5). The host states: "In the first video, a dad films his kids as they're waiting to hear what the big surprise is. Spoiler alert: it's Disney World." (*See id.*). After the children find out their surprise, the host makes a crying noise and says "Disney World is for white people. Is this a viral video, or just the best Six Flags advertisement ever? Six Flags: Because Disney World makes black kids cry." (*See id.*). The host ends by saying "maybe he's crying because his sister freaked out and scared him." (*See id.*).

Jukin's video "Groom Drops Bride" shows a groom carrying his bride to their wedding reception, then tripping and dropping her on the ground while their friends laugh. (*See* SUF 47-48; Ramas Decl., Ex. 1, at Ch. 2). When Equals Three showed the exact same video, its host made remarks like: "Some people say you fall even more in love after you marry someone. Well this guy definitely fell,

V E N A B L E   L L P
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

hard." "Shit, he literally body-slammed his new bride." "Fun fact: the tradition of the groom carrying the bride over the threshold began because Western Europeans thought it was bad luck if the bride tripped into her new home. And if the groom trips, he's just never getting laid." (*See* SUF 49; Ramas Decl., Ex. 1, at Ch. 2).

Equals Three's use of Jukin's video is at most satirizing society or another subject in general rather than critiquing the original work itself. Equals Three's use is, therefore, not a fair use parody. In fact, Courts have rejected the fair use defense in similar situations. In *Rogers v. Koons*, for instance, the artist Jeff Koons copied a photograph of a man and woman holding puppies to create a nearly identical sculpture. 960 F.2d 301, 304-05 (2d Cir. 1992). Koons argued that his copying was a fair use parody because the sculpture was a critique of a materialistic society that values the mass production of commodities. *Id.* at 309-10. The Second Circuit disagreed, finding that the sculpture was not a parody of the photograph because the photograph itself was not the object of the purported parody. *Id.* at 310. A "satirical critique of our materialistic society" was not sufficient justification for Koons copying Rogers' photograph, so the first fair use factor cut against a finding of fair use and as a result, the Second Circuit found that all four factors indicated it was not a fair use. *Id.* at 310-12. Here, Equals Three explicitly alleges that its videos simply "comment on a variety of pop-cultural events and happenings that are topical and interesting." Doc. 1, Compl. at ¶ 13. The use of Jukin's videos to simply comment on pop-culture or interesting topics, is not fair use – it was not fair use for Koons when he used the photograph and it is not fair use for Equals Three.

### C.   Application of the Fair Use Factors

#### 1.   Factor 1 Weighs Against Fair Use Because Equals Three's Use is not Transformative

The first factor in the fair use analysis is "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit

V E N A B L E   L L P
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

educational purposes." 17 U.S.C. § 107(1).  The goal of this factor is to determine whether the accused work is transformative, that is, whether it "adds something new [to the original], with a further purpose or different character, altering the first with new expression, meaning, or message." *Campbell*, 510 U.S. at 579.  "A use is considered transformative only where a defendant changes a plaintiff's copyrighted work or uses the plaintiff's copyrighted work in a different context such that the plaintiff's work is transformed into a new creation." *Wall Data Inc. v. Los Angeles Cnty. Sheriff's Dep't*, 447 F.3d 769, 778 (9th Cir. 2006).  If the new work "merely repackages or republishes the original [it] is unlikely to pass the test." *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1176 (9th Cir. 2013) (quoting Hon. Pierre Leval, Toward a Fair Use Standard, 103 Harv. L. Rev. 1105, 1111 (1990)).

> a.  Equals Three's uses do not transform the purpose or character of the accused works.

In determining whether an infringer's use is transformative under the first fair use factor, courts look at the purpose of the original and the accused works. "Works that make fair use of copyrighted material often transform the purpose or character of the work by incorporating it into a larger commentary or criticism." *Gaylord v. U.S.*, 595 F.3d 1364, 1373 (Fed. Cir. 2010).  In contrast, "a finding that the alleged infringers copied the material to use it for the same intrinsic purpose for which the copyright owner intended it to be used is strong indicia of no fair use." *Marcus v. Rowley*, 695 F.2d 1171, 1175 (9th Cir. 1983).

In *Gaylord v. United States*, 595 F.3d 1364, 1373-74 (Fed. Cir. 2010), the Federal Circuit found that the infringing work (a postage stamp) was not transformative of the original work (the Korean War memorial) because both had the same purpose of honoring Korean War veterans, even though the stamp altered the appearance of the memorial by adding snow and muting the color.  Similarly, the Ninth Circuit found that an entity that copied pages of a real estate association's listing book used the materials for the same purpose – to provide

V E N A B L E   L L P
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

1    information about real estate listings in order to sell houses – and therefore its use

2    was not transformative.  *Supermarket of Homes, Inc. v. San Fernando Valley Bd.*

3    *of Realtors*, 786 F.2d 1400, 1409 (9th Cir. 1986) (affirming district court's

4    summary judgment on the basis that the use was not fair use).  The Ninth Circuit

5    also found in *Marcus* that the first factor weighed against fair use when the

6    defendant copied pages of the plaintiff's cake decorating booklet, since "both

7    plaintiff's and defendant's booklets were prepared for the purpose of teaching cake

8    decorating."  *Marcus*, 695 F.2d at 1175.[5]

9            Likewise, simply adding comments to a video does not create a

10   transformative use.  *Los Angeles News Service v. KCAL-TV Channel 9*, 108 F.3d

11   1119, 1122 (9th Cir. 1997).  In *Los Angeles News Service*, adding a voice-over to a

12   tape of a beating during the Los Angeles riots "[did] not appear to add anything

13   new or transformative to what made the LANS work valuable – a clear, visual

14   recording of the beating itself."  *Id.*  Similarly, the court found in *HarperCollins*

15   *Publishers L.L.C. v. Gawker Media LLC*, 721 F. Supp. 2d 303, 306 (S.D.N.Y.

16   2010), that adding brief introductions on an internet blog to the copied material –

17   leaked excerpts of a book – did not constitute a commentary or discussion of the

18   original work.  The "defendant had not used the copyrighted material to help create

19   something new but has merely copied the material in order to attract viewers to

20   Gawker."  *Id.*  In another case, the Central District of California found that artwork

21   that added certain new elements to a photograph of the Sex Pistols bassist Sid

22   Vicious (*e.g.*, splashes of color, sunglasses, an overlay of a new, blond hairstyle, or

23   making the artwork out of broken vinyl records) did not have the overall effect of

24   transforming the photograph or conveying a significant new meaning.  *Morris v.*

25   _____

26   [5] Several years later the Ninth Circuit disapproved its statement in *Marcus* that the
     wholesale copying of material precludes fair use.  *See Hustler Magazine Inc. v.*

27   *Moral Majority Inc.*, 796 F.2d 1148, 1155 (9th Cir. 1986).  However, the *Hustler*
     decision did not disturb the analysis of the first fair use factor in *Marcus*.

28

1   *Guetta*, No. LA CV12-00684 JAK, 2013 WL 440127, at *1, 8 (C.D. Cal. Feb. 4,

2   2013). Even with those new elements, the defendants' works were still essentially

3   photographs of Sid Vicious. *See id.* at *8.

4        Equals Three's show is not transformative of Jukin's original videos. Equals

5   Three used Jukin's videos for the same purpose that Jukin uses them: to provide

6   entertainment and humor to online viewers. Equals Three also has not transformed

7   the original videos into something new. Although Equals Three alleges that it

8   "weaves a new and different story on top of the original story conveyed in the

9   video," (Doc. 1, Compl. at ¶ 45) even a cursory review of the videos shows this is

10  not true. Instead, Equals Three's "story" is simply pointing out the humor in the

11  video. Thus, like the voice-over added to the news video in *Los Angeles News*

12  *Service,* the brief introductions to leaked book material in *Gawker Media, LLC,*

13  and token elements added to the photographs of Sid Vicious in *Morris*, Equals

14  Three's minor graphics (typically subtitles of the discussion by the subjects of the

15  videos) and obvious comments from the host do not transform the original videos

16  into a new creation. Rather, Equals Three's show does no more than repackage the

17  original videos and is not fair use. *See Seltzer*, 725 F.3d at 1176.

18          b.    Equals Three's uses are commercial in nature.

19

20       In addition, "[t]he fact that a publication was commercial as opposed to

21  nonprofit is a separate factor that tends to weigh against a finding of fair use."

22  *Harper & Row*, 105 S.Ct. at 2231. "'[E]very commercial use of copyrighted

23  material is presumptively an unfair exploitation of the monopoly privilege that

24  belongs to the owner of the copyright.'" *Id.* (quoting *Sony Corp. of Am. v.*

25  *Universal City Studios, Inc.*, 464 U.S. at 451). Here, Equals Three cannot dispute

26  that its use of the original videos was commercial. Equals Three characterizes

27  itself as a "commercial enterprise." (SUF 29). Equals Three also alleges its

28  infringing conduct is commercial because it monetizes its show on YouTube. (*Id.*).

    Courts have found commercial use in similar circumstances. In *Gawker*

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

1  *Media*, for instance, the court found that the defendant's online publication was

2  commercial because 1) the copied material was next to links to advertisements and

3  the defendant received compensation from advertisers when visitors clicked the

4  links, and 2) the defendant's website would become more valuable and attractive to

5  potential advertisers if it received more visitors due to its posting of the copied

6  material. *Gawker Media, LLC*, 721 F. Supp. 2d at 306.

7      Because Equals Three' use is commercial it is not fair use.

8          c.    Equals Three's conduct is improper and does not warrant

9                application of fair use.

10      "Fair use presupposes 'good faith' and 'fair dealing.'" *Harper & Row*, 105

11  S.Ct. at 2232.  Thus, the "propriety of the defendant's conduct" is also "relevant to

12  the 'character' of the use," for example, when the use has the intended purpose of

13  supplanting the rights of the copyright holder. *Id.* at 2231-32 (quoting 3 M.

14  Nimmer, Nimmer on Copyright § 13.05 [A], at 13–72 to –73 (rev. ed. 1985)).

15      In this case, Equals Three's actions show a lack of good faith.  Jukin notified

16  Equals Three about its alleged copyright infringement in 2014.  (SUF 35, 39).

17  Thereafter Equals Three went off the air for a few months and returned to

18  YouTube in July 2014. (*Id.* 37).  When Equals Three announced the return of its

19  show, Jukin sent a letter to inform Equals Three that any use of Jukin's videos

20  without a license would constitute copyright infringement and offered to discuss a

21  "mutually beneficial licensing arrangement." (*Id.* 35-36).  Rather than license the

22  original videos from Jukin, the first video broadcast on the Equals Three show

23  upon its return was an unauthorized copy of one of Jukin's original videos. (*See*

24  *id.* 44-45, 151).  In contrast to many other infringers who engage in dialogue and

25  negotiation in response to Jukin's outreach, Equals Three did not reciprocate

26  Jukin's attempts at negotiation and failed to respond to a second letter sent by

27  Jukin or pay a reasonable license fee. (*See id.* 39-41; Smith Decl. at ¶¶ 26-27).

28      Unlike other YouTube shows similar to the Equals Three show that properly

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

MOTION FOR PARTIAL SUMMARY JUDGMENT

license content from Jukin, Equals Three repeatedly exploited Jukin's original videos for free, despite knowing that the videos could have been obtained with Jukin's authorization for a reasonable fee. (*See* SUF 39-41, 151-52).  Equals Three's use was further improper because after directly copying the original videos, Equals Three "used [them] for the same purpose for which [they] would have been used had [they] been paid for." *Los Angeles News Service v. KCAL-TV Channel 9*, 108 F.3d 1119, 1122 (9th Cir. 1997).  In addition, Equals Three's intentional coping allows it to benefit from Jukin's investment and infrastructure for identifying valuable content.

### 2.  Factor 2 Weighs Against Fair Use Because the Copyrighted Work is Creative

The second fair use factor looks at the nature of the copyrighted work, that is, whether it is creative or factual, unpublished or published. *See, e.g., Morris*, 2013 WL 440127, at *9-10.  Works that document events, such as Jukin's original videos, are not considered mere factual recitations. *See Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1177 (9th Cir. 2012) ("Simply because a photo documents an event does not turn a pictorial representation into a factual recitation of the nature referenced in *Harper & Row*.").  Rather, videos are subject to copyright protection because they are original audiovisual recordings.  17 U.S.C. §102(6).  Nonetheless, whether a work is factual or creative, infringing uses that "focus on the most expressive elements of the work [] exceeds that necessary to disseminate the facts," and weighs against a determination of fair use. *Harper & Row*, 105 S.Ct. at 2232.

Here, almost all of the videos at issue in this case have received copyright registrations.  Although the original videos are usually a record of actual events, Equals Three used the most important and expressive parts of the original videos and rebroadcast them in the same media and to the same target audience as Jukin. (*See* SUF 44, 49, 54, 59, 64, 69, 74, 79, 84, 89, 96, 102, 107, 112, 117, 122, 127,

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

MOTION FOR PARTIAL SUMMARY JUDGMENT

1    132, 137-138, 142).  For example, Equals Three copied the most dramatic elements

2    of Jukin's original video "Black Bear Milk Bottle Rescue" in the Equals Three

3    show titled "The Resurrection." (*See id.* 44; Ramas Decl., Ex. 1, at Ch. 1).  Jukin's

4    original video showed a large field with a bear and a crane in the distance.  The

5    camera moved closer until it was focused on the bear struggling to free its head

6    from a milk jug.  The Jukin video then showed the crane attempting and finally

7    succeeding in pulling the jug off of the bear's head, the bear running away once it

8    became free, and the crane operator inspecting the milk jug.  (*See* SUF 42; Ramas

9    Decl., Ex. 1, at Ch. 1).  The Equals Three show repeatedly used the most

10   expressive portions of the video: when the camera focused in closely on the bear,

11   followed the crane as its operator tried to maneuver it to pull the milk jug off of the

12   bear's head, and showed the successful removal of the milk jug and the bear

13   running off after having been freed.  (*See* SUF 44; Ramas Decl., Ex. 1, at Ch. 1).

14   Accordingly, this fact weighs in favor of Jukin and against fair use.

   ### 3.    Factor 3 Weighs Against Fair Use Because Equals Three
15

16   ### Used Substantial Portions of Jukin's Original Videos

17         The third fair use factor concerns the quantitative and qualitative portion of

18   the work taken in relation to the copyrighted work (not in relation to the infringing

19   work).  *Harper & Row*, 105 S.Ct. at 2233.  Even if only a small amount of the

20   original work was taken, this factor weighs against fair use if the infringer took the

21   most important or expressive portion of the original.  *See id.; Los Angeles News*

22   *Service*, 108 F.3d at 1122 ("While a small amount of the entire Videotape was

23   used, it was all that mattered.").  This factor is important in the context of the other

24   factors because if a considerable amount of the accused work copies the original

25   verbatim, or takes the heart of the original work, this can indicate that the accused

26   work is not transformative (under the first factor) or that it has a greater likelihood

27   of market harm (under the fourth factor).  *Campbell*, 510 U.S. at 587-88.

28         In this case, Equals Three contends its use was fair because it only used

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

1    "short clips excerpted from longer segments."[6]  Doc. 1, Compl. at ¶ 46.  But, the

2    amount copied cannot substantiate fair use because Equals Three copied the heart

3    of each original video, taking the most valuable and entertaining portions and re-

4    broadcasting them in the Equals Three show.

5         For instance, in *Harper & Row Publishers, Inc.*, the Supreme Court

6    considered whether this factor supported fair use when the infringer took "an

7    insubstantial portion" of the copyrighted manuscript.  471 U.S. 539, 564 (1985).

8    The Supreme Court determined that even though a minimal amount was taken,

9    there could be no fair use because the infringer took what was considered the

10   "'most interesting and moving parts of the entire manuscript.'"  *Id.* at 565.

11   Likewise, in *Los Angeles News Service v. KCAL-TV Channel 9*, the Ninth Circuit

12   held this factor weighed against fair use because KCAL copied the most valuable

13   portion of the video.  In essence, KCAL's copying was substantial not because

14   they copied a lot of minutes of the video but because they copied "all that

15   mattered."  108 F.3d 1119, 1122 (9th Cir. 1997).

16        Equals Three may argue that its show is a parody, and therefore, it needed to

17   copy substantial amounts of Jukin's original videos in order to make its point.

18   However, as discussed above, Equals Three's use of the original videos does not

19   qualify as a parody.  In any event, calling a work a parody does not give an

20   infringer an unfettered right to copy excessive amounts of the original.  In

21   *Campbell*, the Court noted that although 2 Live Crew copied the first line and bass

22   riff of the original song, the remainder of the lyrics "departed markedly from the

23   Orbison lyrics" and they altered and added distinctive sounds to the remainder of

24   the music.  *Campbell*, 510 U.S. at 589.  The amount of the original work used in

25

26   [6] A comparison of the original videos to the parts of the Equals Three show in
     which they were used, like that submitted in Exhibit 1, shows that in many

27   instances Equals Three used a sizeable amount of Jukin's original videos and the
     allegations in the Complaint are not accurate.

28

MOTION FOR PARTIAL SUMMARY JUDGMENT

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

1   *Campbell* is in sharp contrast to the large amounts of Jukin's original videos used
2   by Equals Three.  Furthermore, Equals Three's use is wholly lacking distinctive
3   elements, like the sexual lyrics of the 2 Live Crew song in *Campbell*, and instead
4   feature exact copies of Jukin's original videos with minimal commentary.

5        For these reasons the third factor strongly weighs against fair use.

6       **4.**    **Factor 4 Weighs Against Fair Use Because Equals Three's**
7               **Use Harms the Market for Jukin's Original Videos**

8        The accused work's potential effect on the market for the original is
9   "undoubtedly the single most important element of fair use." *Harper & Row*, 105
10  S.Ct. at 2233.  An appropriate fair use does not impair the marketability of the
11  original work; if an accused work adversely affects even the potential market for
12  the original, there can be no fair use. *Id.*

13       In a similar case, *Los Angeles News Service*, discussed *supra*, the Ninth
14  Circuit held fair use did not apply because, like here, the accused infringer was a
15  potential licensee. *Los Angeles News Service*, 108 F.3d at 1120.  Although *Los*
16  *Angeles News Service* involved a news video rather than videos for entertainment
17  purposes, many of the facts are remarkably similar to the facts in this case.  The
18  copyright holder, LANS, and the infringer, KCAL, were both in the news business.
19  *Id.* at 1121.  LANS operated its business by using its own helicopter to gather news
20  and then licensing its news coverage to other outlets, such as KCAL.  *Id.*  After
21  LANS filmed the now well-known beating of Reginald Denny during the Los
22  Angeles riots, it licensed the video to several news stations. *Id.* at 1120.  LANS
23  refused to license the video to KCAL, so KCAL obtained a copy from another
24  station and broadcast it a number of times without LANS' authorization.  *Id.*

25       Since KCAL was a potential licensee of LANS' product, its use of LANS'
26  product for free could "destroy LANS's original, and primary market." *Id.* at
27  1122-23.  Despite the fact that KCAL did not usurp the valuable first publication of
28  the video, the court found that "it is not obvious that there was no impact on the

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

1   market for the first publication rights." *Id.* at 1123.  Based on these facts, and even

2   though LANS could not identify any specific sale or license that it lost due to

3   KCAL's conduct, the Ninth Circuit found that the "effect on the market" factor

4   weighed against a finding of fair use.  *Id.* at 1120, 1122-23.

5        Similarly, Equals Three is a potential licensee of Jukin's videos, but its

6   actions are even more egregious than KCAL's actions because Equals Three

7   repeatedly takes Jukin's works for free instead of paying for a license.  (SUF 44,

8   49, 54, 59, 64, 69, 74, 79, 84, 89, 96, 102, 107, 112, 117, 122, 127, 132, 151).  The

9   nature of Jukin's business – licensing viral videos – means the original videos are

10   most valuable within the initial days and weeks of their first publication, when they

11   are still novel but other outlets can see their growing popularity.  (*Id.* 6).  Equals

12   Three often copies Jukin's videos within 1-2 weeks of their initial publication,

13   which negatively impacts the market for licensing the videos during their most

14   valuable period.  (*See id.* 46, 61, 71, 76, 81, 86, 104, 109, 124, 129, 141, 153).

15        This factor weighs against fair use even if the accused work is a parody

16   (which Equals Three's works are not).  The question to consider under this factor

17   for a parody "is not its potential to destroy or diminish the market for the original

18   [due to its critical impact] . . . but rather whether it *fulfills the demand* for the

19   original."  *Fisher*, 794 F.2d at 438.  "[I]nfringement occurs when a parody

20   supplants the original in markets the original is aimed at, or in which the original

21   is, or has reasonable potential to become, commercially valuable."  *Id.* (citing *Walt

22   Disney Prod. v. Air Pirates*, 581 F.2d 751, 756 (9th Cir. 1978)) (other citations

23   omitted).  When there is a verbatim, non-transformative copying of the original

24   work for commercial purposes, the new work serves as a market replacement for

25   the original and creates likely market harm to the original.  *Campbell*, 510 U.S. at

26   591 (citing *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 451,

27   104 S.Ct. 774 (1984)).

28        Here, Equals Three's use usurps the demand for Jukin's videos.  Jukin loses

1   viewers due to Equals Three's infringement because viewers can watch the

2   substantially unaltered original videos on the Equals Three show, and then have no

3   need and are unlikely to view them again on Jukin's network. (*See* SUF 137-39,

4   144-45). Equals Three's use of Jukin's videos, therefore, drives traffic away from

5   the original videos since viewers are unlikely to go to Jukin's network to rewatch

6   the same content. (*See id.* 137-39, 144). Losing viewership in this way has a

7   concrete impact on Jukin's market. (*Id.* 138-41). Jukin loses the advertising

8   revenue that it would have derived from viewers watching the original videos on

9   its own network, and Jukin loses the opportunity to capture viewers who may have

10  become repeat viewers or subscribers to Jukin's network. (*Id.* 140-43).

11          Equals Three may argue that its infringing videos benefit Jukin because

12  Equals Three sometimes provides links to direct viewers to Jukin's original videos.

13  (Doc. 1, Compl. at ¶ 47). Providing links to Jukin's videos, however, does not

14  rectify the infringement. First, Jukin's videos help Jukin build an audience of

15  viewers who repeatedly visit Jukin's network and view its content. (SUF 142-43).

16  Even if Equals Three is providing a link to Jukin's network it is still

17  misappropriating the first view and making it less likely Jukin sees repeat viewers.

18  (*See id.* 142). Second, Equals Three's links are not always correct. Sometimes

19  Equals Three attributes Jukin's original videos to other infringers and provides

20  links that direct viewers to the other infringing copies of the videos rather than to

21  Jukin's network. (Smith Decl. at ¶ 55).

22          Even if it were true that providing links to Jukin's network benefits Jukin,

23  the fourth factor still weighs against fair use because Equals Three is exploiting a

24  potential market that only Jukin has the right to exploit. The Ninth Circuit has

25  found, in similar circumstances, a lack of fair use even where the new work had a

26  beneficial effect on sales of the original. *Lewis Galoob Toys, Inc. v. Nintendo of*

27  *Am., Inc.*, 964 F.2d 965, 971 (9th Cir. 1992).

28          This factor, thus, weighs against fair use because Equals Three's

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

1  appropriation of the original videos in its online show adversely affects the value

2  of the videos, Jukin's right to license the original videos to other productions, and

3  Jukin's viewership.  (SUF 136-45, 152-55).

4  **VI.    CONCLUSION**

5       Equals Three's use is not fair – it has a pattern and practice of copying

6  Jukin's content and taking advantage of the significant effort and resources Jukin

7  commits to identifying valuable video content, licensing the content, and

8  marketing the content to further increase its value.  Indeed, every factor in the fair

9  use analysis weighs decisively against a finding of fair use.  Equals Three

10 consistently engaged in copyright infringement without regard to Jukin's rights,

11 appropriating and re-broadcasting Jukin's original videos in a way that is not a

12 parody and not transformative.  The original videos are creative, rather than

13 informational, Equals Three took the heart of each original video, and has usurped

14 the market for the original videos that rightfully belongs to Jukin.  Since all of the

15 factors weigh against fair use, this Court should grant summary judgment in favor

16 of Jukin on the issue of fair use.

17

18 Dated:  March 23, 2015                    VENABLE LLP

19                                          By:   /s/ Tamany Vinson Bentz
20                                             Douglas C. Emhoff
                                               Tamany Vinson Bentz
21                                             Melissa C. McLaughlin
22                                             Attorneys for Defendant and
                                               Counterclaimant Jukin Media, Inc.
23

24

25

26

27

28

MOTION FOR PARTIAL SUMMARY JUDGMENT

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900