1   **ABRAMS GARFINKEL MARGOLIS BERGSON, LLP**
THOMAS H. VIDAL (204432) tvidal@agmblaw.com
2   MICHAEL J. WEISS (206473) mweiss@agmblaw.com
5900 Wilshire Blvd., Suite 2250
3   Los Angeles, California 90036
Telephone: (310) 300-2900
4   Facsimile: (310) 300-2901

5   Attorneys for Plaintiff and Counter-Defendants
Equals Three, LLC and Ray William Johnson

6

7

8                    **UNITED STATES DISTRICT COURT**

9          **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| EQUALS THREE, LLC, a California Limited Liability Company, | CASE NO. 2:14-cv-09041-SVW-(AFMx) |
| Plaintiff, | Hon. Stephen V. Wilson |
| v. | Courtroom 6 |
| JUKIN MEDIA, INC., a California Corporation, and DOES 1 through 50, inclusive, | **EQUALS THREE'S AND RAY WILLIAM JOHNSON'S TRIAL BRIEF** |
| Defendants. | Final Pretrial Conference Date:  February 22, 2016 Time: 3:00 P.M. Ctrm:  6 |
| JUKIN MEDIA, INC., a California Corporation, | Action Filed: November 21, 2015 Trial Date:     March 1, 2016 |
| Counterclaimant, | |
| v. | |
| EQUALS THREE, LLC, a California limited liability company; and RAY WILLIAM JOHNSON, an individual, | |
| Counter-Defendants. | |

28       Pursuant to Local Rule 16-5, Plaintiff Equals Three and Counter-Defendant

Abrams Garfinkel Margolis Bergson, LLP
5900 Wilshire Boulevard, Suite 2250
Los Angeles, California 90036
Telephone: (310) 300-2900
Facsimile: (310) 300-2901

Ray William Johnson (collectively, "Equals Three") submit this trial brief pursuant to L.R. 16-10.

## I. INTRODUCTION

The purpose of this trial brief is to provide supplemental briefing to the Court regarding the proper analytical framework for a fair use analysis. Because the key facts have been set out in Plaintiff's contentions of fact and law, they are not repeated here. For the most parts, only the points of law are identified.

## II. FAIR USE ANALYSIS

### A. Analytical Framework

There is no infringement where there is a fair use of the copyrighted work for purposes such as criticism or comment. 17 U.S.C. § 107 (2012). To put it another way, "[c]reators of original works have many rights and remedies against those who infringe their work. However, their rights are limited when someone takes the original work and derives something new and different from it." *Keeling v. New Rock Theater Prods., LLC*, 2011 U.S. Dist. LEXIS 52736, *2-3 (S.D.N.Y. May 17, 2011). The Copyright Act provides that the fair use of a copyrighted work, "for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright." 17 U.S.C. § 107. In determining whether the use of a work is a fair use, courts should consider the following factors:

Abrams Garfinkel Margolis Bergson, LLP
5900 Wilshire Boulevard, Suite 2250
Los Angeles, California 90036
Telephone: (310) 300-2900
Facsimile: (310) 300-2901

**Abrams Garfinkel Margolis Bergson, LLP**
5900 Wilshire Boulevard, Suite 2250
Los Angeles, California 90036
Telephone: (310) 300-2900
Facsimile: (310) 300-2901

1
2
3
4
5

(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work.

6
7   *Id*. These factors should not be treated in isolation, and instead must be explored and

8   weighed in light of copyright's purpose. *Campbell v. Acuff-Rose Music, Inc.*, 510

9
10  U.S. 569, 578 (1994). The Supreme Court has found that transformative uses "lie at

11  the heart of the fair use doctrine's guarantee of breathing space within the confines

12  of copyright" because such works generally further "the goal of copyright, to

13
14  promote science and the arts[.]" *Id*. at 579.  There are no bright-line rules; fair use

15  must be evaluated on a case-by-case basis by reference to the four statutory factors.

16  *Id*. at 577.

17
18      **B.   State of Mind is Irrelevant to Fair Use Determinations.**

19
20      Jukin's intention appears to be to put on evidence of state of mind in two

21  different ways.  First, it hopes to show that the Equals Three's creative team did not

22  intentionally make a fair use because they do understand the fair use factors, and (in

23
24  some cases) could not recite the definition of parody in a deposition.  Second, they

25  argue that Equals Three, in bad faith, turned down a licensing opportunity with

26  Jukin to license the source videos and that such bad faith somehow precludes Equals

27
28  Three from having made a fair use of the Jukin vieos.  Neither type of evidence is

**Equals Three, LLC and Johnson's**
**Trial Brief**
Case No. 2:14-cv-09041-SVW-**(AFMx) | 3**

relevant to a fair use determination.

### *1. Intent to Create a Parody or Other Transformative Work*

Jukin has gone to great lengths to show that members of Equals Three's creative team do not know what a parody is, do not know the difference between a parody and a satire, and a variety of other things to attempt to show that because they did not know what they were doing, they did not make a fair use. Even if those were the facts (and Equals Three and Johnson dispute these characterizations), they are wholly irrelevant. Subjective intent is not the test for parody. "The threshold question when fair use is raised in defense of parody is whether a parody character may be reasonably perceived." *Campbell* at 582.

In *Cariou v. Prince*, 714 F.3d 694, 707 (2d Cir. 2013), the District Court concluded that certain works were not transformative because of deposition testimony to the effect that the defendant did not have any message, that he was not trying to create anything with a new meaning or a new message, and that he did not have any interest in the plaintiff's original intent. *Id.* The Court concluded that the absence of testimony that would lend strong support to a fair use defense was not dispositive. *Id.* "What is critical is how the work in question appears to the reasonable observer, not simply what an artist might say about a particular piece or body of work." The Court further concluded that the proper analysis required that it not confine itself to defendant's explanations of his works but instead to "examine how the [works] may 'reasonably be perceived' in order to assess their

Abrams Garfinkel Margolis Bergson, LLP
5900 Wilshire Boulevard, Suite 2250
Los Angeles, California 90036
Telephone: (310) 300-2900
Facsimile: (310) 300-2901

transformative nature." *Id.*

### 2. *Bad Faith in Not Entering a License*

In its Motion for Partial Summary Judgment, Jukin argued that Equals Three acted in bad faith by not entering into a license agreement with Jukin. The Court in its order denying, in part, Jukin's motion concluded that any purported bad faith is irrelevant:

> Finally, the Court does not find that Equals Three's purported bad faith in not obtaining a license mitigates against fair use. "If the use is otherwise fair, then no permission need be   sought or granted." *Campbell*, 510 U.S. at 585 n.18. If using a song after requesting and being denied a license does not show bad faith, then neither does failing to obtain a license and continuing to use footage after being sent a demand letter. *See id.* (finding that being denied permission to use a work does not weigh against fair use).

## C. **The Four Fair Use Factors**

### 1. *Purpose & Character of the Work*

The first fair use factor requires the court to consider "the purpose and character of the work." 17 U.S.C. § 107(1) (2012). The central purpose of this first factor is to determine whether the new work is transformative. *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1164 (9th Cir. 2007). A new work is transformative when it does not "merely supersede the objects of the original creation but rather adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message." *Id.* (internal

**Abrams Garfinkel Margolis Bergson, LLP**
5900 Wilshire Boulevard, Suite 2250
Los Angeles, California 90036
Telephone: (310) 300-2900
Facsimile: (310) 300-2901

quotation marks omitted) (quoting *Campbell*, 510 U.S. at 579). The "more transformative the new work, the less will be the significance of the other factors . . . that may weigh against a finding of fair use." *Morris v. Young*, 925 F. Supp. 2d 1078, 1084-85 (C.D. Cal. 2013) (alteration in original) (quoting *Campbell*, 510 U.S. at 579). The preamble to § 107 lists criticism and comment as illustrative bases supporting fair use under this factor. *See Monge*, 688 22 F.3d at 1173. Additionally, the Supreme Court has stated that parody has "an obvious claim to transformative value." *Campbell*, 510 U.S. at 579.   "Among the various forms of 'transformative use' is parody . . . ." *Sedgwick Claims Mgmt. Servs. v. Delsman*, 2009 U.S. Dist. LEXIS 61825, *12 (N.D. Cal. July 16, 2009).

A parody is a "literary or artistic work that imitates the characteristic style of an author or a work for comic effect or ridicule." *Campbell*, 510 U.S. at 580 (quoting AMERICAN HERITAGE DICTIONARY 1317 (3d ed. 1992)).  For the purposes of copyright law, a parodist may claim fair use where he or she uses some of the "elements of a prior author's composition to create a new one that, at least in part, comments on that author's works." *Id*.  The original work need not be the sole subject of the parody; the parody "may loosely target an original" as long as the parody "reasonably could be perceived as commenting on the original or criticizing it, to some degree." *Id*. at 580–81, 583.  Parody, thus, emerges from the "joinder of reference and ridicule." *Mattel Inc. v. Walking Mt. Prods.*, 353 F.3d 792, 802 (9th Cir. 2003).  The issue of whether a work is a parody is a question of law, not a

Abrams Garfinkel Margolis Bergson, LLP
5900 Wilshire Boulevard, Suite 2250
Los Angeles, California 90036
Telephone: (310) 300-2900
Facsimile: (310) 300-2901

matter of public majority opinion. *Id.* at 801. "Unless the plaintiff's copyrighted work is at least in part the target of the defendant's satire, then the defendant's work is not a "parody' in the legal sense. . . ." *Id.* (citing *Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1400-01 (9th Cir. 1997)).

Even if the E3 Show episodes were not deemed parodies, they are still transformative because the episodes comment upon or criticize the Jukin videos. As the Court noted in its Order denying, in part, Jukin's Motion for Partial Summary Judgment (Dkt No. 68):

> In plain terms, whether or not Equals Three's episodes criticize Jukin's videos, the events depicted in Jukin's videos are the butt of Equals Three's jokes. Thus, the jokes, narration, graphics, editing, and other elements that Equals Three adds to Jukin's videos add something new to Jukin's videos with a different purpose or character.

The "purpose" factor also requires the Court to consider whether the defendant's use is commercial or noncommercial. *See* 17 U.S.C. § 107 (2012); *Harper & Row, Publrs. v. Nation Enters.*, 471 U.S. 539, 562, 105 S. Ct. 2218, 85 L. Ed. 2d 588 (1985). But, where a where a work has a "transformative nature and parodic quality," its commercial qualities become less important. *Mattel*, 353 F.3d at 803; *see also Campbell,* 510 U.S. at 579 (the more "transformative the new work, the less will be the significance of the other factors"). Fair use works involving comment and criticism "are generally conducted for profit in this country." *Campbell*, 510 U.S. at 584 (quoting *Harper & Row*, 471 U.S. at 592). On balance,

Abrams Garfinkel Margolis Bergson, LLP
5900 Wilshire Boulevard, Suite 2250
Los Angeles, California 90036
Telephone: (310) 300-2900
Facsimile: (310) 300-2901

**Abrams Garfinkel Margolis Bergson, LLP**
5900 Wilshire Boulevard, Suite 2250
Los Angeles, California 90036
Telephone: (310) 300-2900
Facsimile: (310) 300-2901

1  since the E3 show is a parody and highly transformative in nature, commercial

2  expectation should not weigh much against E3.  As the Court noted in its Order

3

4  denying, in party, Jukin's Motion for Partial Summary Judgment (Dkt No. 68):

5       Equals Three's use of Jukin's videos is admittedly

6       commercial.  Nevertheless, the commercial nature of the use
        is outweighed by the episode's transformativeness. *See*

7       *SOFA Entm't, Inc. v. Dodger Prods., Inc.*, 709 F.3d 1273,
        1278–79 (9th Cir. 2013) (finding insignificant the

8       commercial nature of defendant's work where defendant's
        use was transformative).

9

10

11           *2.   Nature of the original work*

12      The second factor of fair use, the nature of the original work, considers (1) the

13  publication status of the original work and (2) the extent to which the original work

14  is creative.  *Harper & Row*, 471 U.S. at 563–64.  The creative aspect of the original

15  work is a critical element of the original work's nature.  *Campbell*, 510 U.S. at 586.

16  "This factor calls for recognition that some works are closer to the core of intended

17

18  copyright protection than others, with the consequence that fair use is more difficult

19  to establish when the former works are copied." *Id*.

20

21      The Court in *Los Angeles News Service v. KCAL-TV Channel 9* held that

22  where the original work is information and factual, "this factor makes it a great deal

23

24  easier to find fair use."  108 F.3d 1119, 1122 (9th Cir. 1997).  In that case, Los

25  Angeles News Service (LANS) caught the beating of Reginald Denny, in the Wake

26  of the Rodney King riots, on camera from a news helicopter.  *Id*. at 1120.  The court

27

28  found that "[t]he Denny beating tape is information and factual and news; each

**Abrams Garfinkel Margolis Bergson, LLP**
5900 Wilshire Boulevard, Suite 2250
Los Angeles, California 90036
Telephone: (310) 300-2900
Facsimile: (310) 300-2901

characteristic strongly favors KCAL," ultimately finding that this second factor weighed in favor of finding fair use. *Id*. at 1122.

The Ninth Circuit in *Sofa Entertainment, Inc. v. Dodger Productions* established that even an audiovisual work is not presumptively creative. 709 F.3d 1273 (9th Cir. 2013). In that case, the copied work was a clip from *The Ed Sullivan Show* in which Ed Sullivan introduces the rock and roll group, the Four Seasons. *Id*. at 1277. Though the episode of *The Ed Sullivan Show* as a whole could be deemed creative and "near the core of copyright," the particular clip conveyed primarily factual information, and so this factor weighed in favor of fair use. *Id*. at 1279.

This second factor, the nature of the original work, is "not . . . ever likely to help much in separating the fair use sheep from the infringing goats in a parody case, since parodies almost invariably copy publicly known, expressive works." *Campbell*, 510 U.S. 586; *see also Dr. Seuss*, 109 F.3d at 1402 (9th Cir. 1997); and *Bourne Co. v. Twentieth Century Fox Film Corp.*, 602 F.Supp.2d 499, 509 (S.D.N.Y. 2009).

### 3. Amount & Substantiality

The third fair use factor, "asks whether 'the amount and substantiality of the portion used in relation to the copyrighted works as a whole,' . . . are reasonable in relation to the purpose of copying." *Campbell*, 510 U.S. at 587. Therefore, the Court should analyze this factor in light of the parodic character and purpose of E3's use.

**Abrams Garfinkel Margolis Bergson, LLP**
5900 Wilshire Boulevard, Suite 2250
Los Angeles, California 90036
Telephone: (310) 300-2900
Facsimile: (310) 300-2901

The law does "not require parodic works to take the absolute minimum amount of the copyrighted work possible." *Mattel*, 353 F.3d at 804; *see also Leibovitz v. Paramount Pictures Corp.*, 137 F.3d 109, 116 (2d Cir. 1998). The reasonableness of any excess taken depends on "the extent to which the [work's] overriding purpose and character is to parody the original or, in contrast, the likelihood that the parody may serve as a market substitute for the original." *Campbell* 510 U.S. at 587.

Jukin claims that Equals Three takes the "heart" of Jukin's videos, but as the Court noted in its Order denying, in part, Jukin's Motion for Partial Summary Judgment, parodies may need to take a work's heart in order to conjure up the original and achieve its parodic purpose. *Campbell,* 510 U.S. at 588-89.

>    *4.   Effect upon the market for the original work.*

The fourth factor of the fair use analysis measures the effect of the use upon the potential market for or value of the copyrighted work. 17 U.S.C. §107(4) (2012). In assessing this factor, a court must consider "whether the secondary use usurps or substitutes for the market of the original work." *Castle Rock Entm't, Inc. v. Carol Publ'g Group*, 150 F.3d 132, 145 (2d Cir. 1998).

This inquiry requires courts to consider both the extent of the harm caused by the alleged infringer and "whether unrestricted and widespread conduct of the sort engaged in by the defendant . . . would result in a substantially adverse impact on the potential market for the original." *Campbell*, 510 U.S. at 590 (internal quotation

marks and citation omitted). This inquiry must include harm to the market for the

original and harm to the market for derivative works. *Id*. However, the law does not

recognize a derivative market for critical works. Id. at 592. Market harm caused by

effective criticism that suppresses demand is not cognizable. *Id*. at 591. Instead, the

only kind of harm cognizable is market substitution—i.e. where the new work

diminishes demand for the original work by acting as a substitute for it. *Id*. at 591–

92. Thus, where a work is transformative, market harm may not so readily be

inferred and there is no presumption of market harm. *Monge*, 688 F.3d at 1180–81.

Where the secondary work serves a fundamentally different function than the

original there is little risk of the secondary work supplanting the original.  *Maxtone-

Graham v. Burtchaell*, 803 F.2d 1253, 1264 (2d Cir. 1986).  Where the second use is

transformative, "market substitution is at least less certain, and market harm may not

be so readily inferred." *Campbell*, 510 U.S. at 590.

Effectively, E3 substantially alters the original videos with "new expression,

meaning and message." *Campbell*, 510 U.S. at 579 (citing Pierre N. Leval,

*Commentary: Toward A Fair Use Standard*, 103 Harv. L. Rev. 1105, 1111 (1990)).

Thus, E3's essential purpose for using the videos is commentary and criticism – a

quintessential parody.

It is well settled that "as to parody pure and simple, it is more likely that the

new work will not affect the market for the original in a way cognizable under this

factor, that is, by acting as a substitute for it.  This is so because parody and the

**Abrams Garfinkel Margolis Bergson, LLP**
5900 Wilshire Boulevard, Suite 2250
Los Angeles, California 90036
Telephone: (310) 300-2900
Facsimile: (310) 300-2901

**Abrams Garfinkel Margolis Bergson, LLP**
5900 Wilshire Boulevard, Suite 2250
Los Angeles, California 90036
Telephone: (310) 300-2900
Facsimile: (310) 300-2901

original usually serve different market functions." *Campbell*, 510 U.S. at 590.

While the market for licensing an original work may be relevant to this factor, Jukin is not entitled to a licensing fee for a work that qualifies for the fair use defense as a parody. *See Leibovitz*, 137 F.3d at 117 (1998). Jukin's concern about lost revenue is misplaced: lost revenue due to "criticism or comment—whether or not parodic—is a risk artists [] must accept." *Id*. at 116 n.7. The video at issue in *KCAL-TV* is distinguishable as it would not qualify for fair use as a parody. As the Court concluded in its Order denying, in part, Jukin's Motion for Partial Summary Judgment:

> Jukin further argues that Equals Three's episodes usurp demand for Jukin's videos. In support of this argument, Jukin offers evidence that it licenses its videos to shows which it claims are similar to Equals Three's. However, as stated above, there is no cognizable derivative market for criticism. Thus, Jukin's argument fails to the extent that Jukin claims harm to a licensing market for shows that critique and mock its videos in the manner that Equals Three does.

In *Bill Graham Archives v. Dorling Kindersley Ltd.*, no market harm was found where defendant reproduced concert posters and tickets in a book about the musical group the Grateful Dead. 448 F.3d at 608 (2d Cir. 2006). The copyright owner argued that defendant interfered with the market for licensing its images. Like Jukin, the copyright claimant contended that there is an established market for licensing its works and it suffered both the loss of royalty revenue directly from [defendant] and the opportunity to obtain royalties from others. The court in *Bill*

*Graham Archives* concluded that this argument fails to show impairment to a

traditional, as opposed to a transformative market.  *Id*. at 615 & n.6.

DATED:  February 23, 2016          ABRAMS GARFINKEL MARGOLIS BERGSON, LLP


By:____/s/ Thomas H. Vidal_____
Thomas H. Vidal
Michael J. Weiss
Attorneys for Plaintiff/Counter-Defendant Equals
Three, LLC & Counter-Defendant Ray William
Johnson

**Abrams Garfinkel Margolis Bergson, LLP**
5900 Wilshire Boulevard, Suite 2250
Los Angeles, California 90036
Telephone: (310) 300-2900
Facsimile: (310) 300-2901

**Equals Three, LLC and Johnson's**
**Trial Brief**
Case No. 2:14-cv-09041-SVW-**(AFMx)** | 13